UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **FRONTLINE CONTRACTORS, LLC** | : |
| Plaintiff, | : |
| v. | : Civil Action No. _____ |
| **SPRINT CORPORATION,** | : District Judge: _____ |
| 6200 Sprint Parkway | : |
| Overland Park, KS 66251 | : Magistrate Judge: _____ |
| Please Serve:  R/A: Corporation Service Company | : |
| 2900 SW Wanamaker Drive, Suite 204 | : |
| Topeka, KS 66614 | : |
| AND | : |
| **JWH TELECOMMUNICATIONS, INC.,** | : |
| 32687 Caserta Drive | : |
| Temecula, CA 92592-9351 | : |
| Please Serve:  R/A: United States Corporation Agents, Inc. | : |
| 500 N. Rainbow Blvd., Ste. 300A | : |
| Las Vegas, NV 89107 | : |
| AND | : |
| **JACK W. HAWLEY,** | : |
| 32687 Caserta Drive | : |
| Temecula, CA 92592-9351 | : |
| AND | : |
| **PAUL J. CASTELLI,** | : |
| 51 Eastwood Road | : |
| Media, PA 19063-2106 | : |
| | : **TRIAL BY JURY** |
| Defendant(s). | : **DEMANDED** |
| | : |

## COMPLAINT
**(Violation of RICO; Business Conspiracy; Fraud in the Inducement; Breach of Contract, or in the alternative, Unjust Enrichment)**

1

COMES NOW, Plaintiff, Frontline Contractors, LLC ("Frontline" or "Plaintiff"), by and through its undersigned counsel, and moves this Honorable Court for judgment against Sprint Corporation ("Sprint"), JWH Telecommunications, Inc. ("JWH"), Jack W. Hawley ("Hawley"), and Paul J. Castelli ("Castelli") (collectively, "Defendants"), on the grounds and praying for the relief hereinafter set forth:

## PARTIES

1. Plaintiff, Frontline, is, and at all times relevant hereto has been, a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located in Upperville, Virginia, and licensed to transact business in the Commonwealth of Virginia as a foreign limited liability company.

2. Plaintiff is informed and based thereon alleges that Defendant, Sprint, is, and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of Kansas, with its principal place of business located in Overland Park, Kansas, and transacts business by contracting with and offering telecommunications services to businesses and residents of all fifty states within the United States, including but not limited to businesses and residents of the Commonwealth of Virginia.

3. Plaintiff is informed and based thereon alleges that Defendant, JWH Telecommunications, Inc., is and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of Nevada, with its principal place of business located in Temecula, California.

4. Plaintiff is informed and based thereon alleges that Defendant, Hawley, is and at all times relevant hereto has been, a resident of the State of California and President and Chief Executive Officer ("CEO") of Defendant corporation, JWH.

5. Plaintiff is informed and based thereon alleges that Defendant, Castelli, is and at all times relevant hereto has been, a resident of the Commonwealth of Pennsylvania and an employee of Defendant corporation, Sprint.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the Racketeer Influenced and Corrupt Organizations Act (codified at 18 U.S.C. § 1962, *et seq.,* "RICO") claim pursuant to 18 U.S.C. § 1964(c).

2. In the alternative, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff is a citizen of the Commonwealth of Virginia by virtue of the location of its principal place of business in Fauquier County, Virginia; and that Defendant Sprint is a citizen of the State of Kansas, Defendant JWH a citizen of the State of Nevada, Defendant Hawley a citizen of the State of California, and Defendant Castelli a citizen of the Commonwealth of Pennsylvania. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.

3. This Court has supplemental jurisdiction over Plaintiff's business conspiracy and civil conspiracy claims, breach of contract claim, fraud in the inducement claim, and in the alternative, unjust enrichment claim, pursuant to 28 U.S.C § 1367, as Plaintiff's claims are so related to the claims within the Court's original jurisdiction that it forms the part of the same case or controversy.

4. This Court has *in personam* jurisdiction over Defendants pursuant to Va. Code Ann. § 8.01–328.1(A)(2) as Defendants, and each of them, contracted with Plaintiff in the Commonwealth of Virginia.

5. This Court has *in personam* jurisdiction over Defendants pursuant to Va Code Ann. § 8.01–328.1(A)(4) as the Defendants, and each of them, caused tortious injury in the Commonwealth of Virginia by an act or omission outside of the Commonwealth of Virginia.

6. Plaintiff is informed and believes and based thereon alleges that Defendants, and each of

them, have purposefully availed themselves to the courts of the Commonwealth of Virginia by, among other things, soliciting to enter into and by actually entering into contracts with Virginia businesses, such as the Agreement (as defined below) between the parties described herein, and Defendants, and each of them, derived substantial revenue from obtaining such investments.

7. Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, offer telecommunications services, and other goods and services, both through themselves and third-party agents, over the internet and as a result have repeated contacts with residents of the Commonwealth of Virginia, including but not limited to through contracts established with residents of, and businesses organized and existing under the laws of, the Commonwealth of Virginia.

8. Venue is proper in the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts and/or omissions giving rise to these claims raised by this Complaint occurred and continue to occur, within this District and Division.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

9. In or around early October 2016, Plaintiff was contacted by another telecommunications service company, YKTG Solutions, LLC ("YKTG") regarding a project for Sprint whereby JWH was searching for potential subcontractors. YKTG offered to provide Plaintiff's contact information to JWH, to which Plaintiff agreed.

10. Shortly after being contacted by YKTG, Plaintiff was contacted by JWH, who solicited Plaintiff as a subcontractor for a project for Sprint, with telecommunications decommission service work to be completed by Plaintiff in various assigned worksites in Ohio (the "Sprint Project").

11. Upon the terms of JWH's offer for the Sprint Project, Plaintiff, as a subcontractor for

JWH, was to work directly with Sprint to complete telecommunications decommission service work on the Sprint Project, which would be assigned through lists of service sites and work schedules. Plaintiff would receive payment from JWH, as its subcontractor, when the work for which it was assigned on the Sprint Project was completed and Sprint issued payment to JWH.

12. Plaintiff and JWH orally agreed to the terms of JWH's offer (the "Agreement"), and on or about October 11, 2016, began performing work on the Sprint Project pursuant to the first list of sites and work schedule issued to it by Sprint.

13. From about October 11, 2016, until approximately November 3, 2016, Frontline performed all telecommunications decommission work assigned to it by Sprint, pursuant to the Sprint Project and the Agreement terms.

14. On or about November 3, 2016, the final close out tasks on the Sprint Project were completed and all equipment was returned by Plaintiff to Sprint. Plaintiff then completed and submitted all required documents to both Sprint and JWH.

15. Following submission of required documentation upon the close of the work performed by Plaintiff on the Sprint Project, Sprint indicated to Plaintiff that it was satisfied with Plaintiff's work on the Sprint Project.

16. Despite the completion of its work on the Sprint Project, Plaintiff never received payment from JWH, pursuant to the terms of the Agreement, or from Sprint, for the work it performed.

17. On or about November 11, 2016, Stewart Smits ("Smits"), Vice President of JWH, sent an email communication to Dave Mills ("Mills"), then-employee of Plaintiff, and requested bank account information for Plaintiff so that JWH could wire Plaintiff payment for work performed by Plaintiff on the Sprint Project (the "Wire Transfer"). This email communication is attached hereto as **Exhibit A** and is incorporated herein by such reference.

18.     Mills provided the information to Smits as requested. **Exhibit A**.

19.     However, no payment by wire was ever received by Plaintiff.

20.     Plaintiff continued to maintain contact with JWH regarding payment, and on or about December 9, 2016, Smits again contacted Mills via email and forwarded a copy of a check in the amount of forty-nine thousand five hundred dollars ($49,500.00) (the "Check") owed to Plaintiff for work performed under the Agreement. Allegedly, the Check was sent by courier overnight to Plaintiff by Hawley, in lieu of the alleged Wire Transfer. **Exhibit A.**

21.     In the email communication, Smits also informed Mills that a copy of the Check was sent to Sprint, as well, to confirm payment. No tracking information was ever provided by JWH regarding the shipment of the Check. **Exhibit A.**

22.     When Plaintiff did not receive the Check from JWH on December 9, 2016, as promised by Smits, Joseph Markus ("Markus"), an officer of Plaintiff, reached out by email to Smits to inquire into the status of the payment and when to expect receipt of the Check. No response, nor any tracking information, was provided by JWH. This email communication is attached hereto as **Exhibit B** and is incorporated herein by such reference.

23.     As of December 15, 2016, Plaintiff still had not received payment—via Wire Transfer or Check—from JWH, as promised in several prior communications. As a result, Markus again attempted to reach out to JWH, by telephone and email, but was unable to secure payment as promised from JWH for any (and all) work performed by Plaintiff on the Sprint Project. **Exhibit B**.

24.     On or about December 23, 2016, Plaintiff received the Check from JWH. However, when Plaintiff attempted to deposit the Check, the bank would not honor the Check and the entire amount—$49,500.00 —was charged back on Plaintiff's bank account as a result of JWH issuing

a stop payment upon the Check. Plaintiff was notified of the stop payment and the chargeback in a Notice of Special Handling (the "Notice"), issued by Plaintiff's bank. The Notice is attached hereto as **Exhibit C** and is incorporated herein by such reference.

25. Plaintiff has continued to attempt to reach out to Defendants regarding payment but to no avail. Further, Castelli has represented to Plaintiff that the matter had been escalated to Sprint's legal department, when, upon information and belief, it had not. See email communications between Plaintiff and Castelli, attached hereto as **Exhibit D** and incorporated herein by such reference.

26. As a result of Defendants' actions, Plaintiff continued to go unpaid for work performed pursuant to the Agreement, and, in fact, has incurred further costs in connection with the returned Check.

27. To date, Plaintiff has not received any payment from either JWH or Sprint for the work performed by Plaintiff on the Sprint Project.

28. Upon further information and belief, JWH was improperly awarded the Sprint Project.

29. Specifically, upon information and belief, JWH secured the winning bid for the Sprint Project, among other projects for Sprint, without having a valid bond in place as required.

30. Sprint requires contractors on its projects to be bonded pursuant to an enumerated minimum insurance coverage policy (the "Insurance and Bonds Policy"). A copy of this policy is attached hereto as **Exhibit E** and is incorporated herein by such reference.

31. In fact, paragraph 4(g) of the Insurance and Bonds Policy lays forth Sprint's requirements for payment bonds as to each work order issued to all contractors of Sprint. **Exhibit E.**

32. Based upon the Insurance and Bonds Policy, JWH, as a contractor on the Sprint Project for Sprint, was required to furnish proof of payment bond in accordance thereto. **Exhibit E.**

33. Upon information and belief, Hawley, on behalf of JWH, and Castelli, an employee of Sprint, worked together to secure work between JWH and Sprint, including the Sprint Project, without requiring JWH to submit proof that a payment bond was in place.

34. Upon information and belief, Castelli intentionally and purposefully accepted JWH's bid on the Sprint Project, as well as other projects, with the knowledge that JWH did not have a payment bond as required by the Insurance and Bonds Policy.

35. Upon information and belief, Castelli accepted JWH's bid, without payment bond, upon an agreed upon kickback from JWH and Hawley.

36. Upon further information and belief, Hawley and Castelli have operated under similar circumstances regarding the award of other projects without proof of the required payment bonds and may continue to do so.

37. As a result of the actions of Defendants, Plaintiff has not been paid for work performed on the Sprint Project.

## STATEMENT OF FACTS APPLICABLE TO RICO CLAIM

38. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

### Enterprise

39. Plaintiff is informed and believes and based thereon alleges that Hawley and Castelli have held themselves out to the public as one or more <u>distinct entities separate from themselves</u> under variations of "JWH Telecommunications, Inc." **Exhibits C-D.**

### Conduct

40. Plaintiff is informed and believes and based thereon alleges that, through one or more of

their aliases, Hawley and Castelli were indispensable to achieving JWH's goal as its principal and key orchestrators.

41. As evidenced through multiple email communications, Hawley and Castelli held themselves out to Plaintiff as agents of JWH. **Exhibits C-D.**

Racketeering Activity ("Predicate Act")

42. Plaintiff is informed and believes and based thereon alleges that Hawley and Castelli intended to utilize communication through wire by telephone and email between Hawley, in the State of California, to defraud Plaintiff, licensed and operating from the Commonwealth of Virginia, out of more than $49,500.00, to be received through Wire Transfer given the immediate ability to access the funds.

43. In furtherance of and prior to the execution of the Agreement, Plaintiff provided Hawley, vis-à-vis emails between Smits and Mills, with bank account information for a bank account in Virginia so that Hawley could allegedly wire Plaintiff, from the State of California, payment for work performed on the Sprint Project pursuant to the Agreement. **Exhibit A.**

44. In furtherance of and prior to the execution of the Agreement, Hawley, through email correspondences, agreed to and sent the Check, from the State of California to the Commonwealth of Virginia, to Plaintiff.

45. In furtherance of and prior to the execution of the Agreement, Plaintiff and Hawley exchanged several emails and telephone calls through various computer and telephone devices located in different states, with at least one device located in the Commonwealth of Virginia and at least one other device located in the State of California.

46. Plaintiff is informed and believes and based thereon alleges that at no relevant times did Hawley or Castelli intend to honor the terms of the Agreement.

9

Pattern

47. In furtherance of and prior to the execution of the Agreement, Plaintiff provided Hawley with its bank account information for a bank account in the Commonwealth of Virginia, as requested by Hawley, so that it could receive the Wire Transfer from Hawley, as an agent of JWH, in payment for work performed pursuant to the Agreement.

48. In furtherance of and prior to the execution of the Agreement, Plaintiff provided Hawley with its mailing address in the Commonwealth of Virginia, as requested by Hawley, so that it could receive the Check from Hawley, as an agent of JWH, in payment for work performed pursuant to the Agreement.

49. Plaintiff never received a Wire Transfer from Hawley and/or JWH and was unable to deposit the Check eventually sent by Hawley due to a stop payment which Plaintiff is informed and believes was issued by Hawley.

50. Plaintiff is informed and believes and based thereon alleges that Hawley and Castelli worked in tandem to allow JWH to receive the winning bid on the Sprint Project without requiring JWH to submit proof of payment bond as required. **Exhibit E.**

51. Plaintiff is further informed and believes and based thereon alleges that neither Hawley nor Castelli had any intention of honoring the terms of the Agreement or fulfilling any obligations with respect to payment thereupon.

52. Plaintiff is informed and believes and based thereon alleges that Hawley and Castelli may have worked together to award JWH other projects for which (a) JWH was not bonded, as required; and (b) JWH contracted with other individuals and/or entities to perform work on such other projects. **Exhibits C-E.**

53. Plaintiff is informed and believes and based thereon alleges that it is one of many

companies defrauded by Hawley and Castelli herein.

Continuity and Danger to Public

54. Plaintiff is informed and believes and based thereon alleges that Hawley continues to have outstanding debt and payment obligations to individuals and/or entities other than Plaintiff.

55. Plaintiff is informed and believes and based thereon alleges that Hawley and Castelli continue to act together as principal and key orchestrators in JWH's goal(s).

56. Plaintiff is informed and believes and based thereon alleges that Hawley and Castelli continue to use JWH to provide telecommunications services to the public.

57. As of September 27, 2018, through his LinkedIn Page ("Hawley LinkedIn")[1], Hawley continues to hold out to the marketplace his affiliation with JWH.

58. As of September 27, 2018, through his LinkedIn Page ("Castelli LinkedIn")[2], Castelli continues to hold out to the marketplace his affiliation with Sprint as a market manager, a role integral to project awards like that of the Sprint Project.

**COUNT I**
**RICO Violation (18 U.S.C. § 1962(c))**
**(As to Defendant Hawley and Defendant Castelli)**

59. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

60. Defendants Hawley and Castelli held themselves out as partners and agents of JWH.

61. Defendants Hawley and Castelli were responsible for operating, managing, and directing the affairs of JWH and other JWH affiliates.

---

[1] https://www.linkedin.com/in/jack-hawley-2a145b29
[2] https://www.linkedin.com/in/paul-castelli-73aa433

62. JWH and/or its affiliates are enterprises within the meaning of 18 U.S.C. § 1961(4).

63. Defendants Hawley and Castelli have engaged in a continuous and repeated pattern of racketeering behavior, as detailed above, related to the telecommunications services industry and the award of project contracts therein.

64. Defendants Hawley's and Castelli's systemic racketeering behavior is engaged in with a similar purposes, results, participants, victims, and methods of commission.

65. These actions include but are not limited to on at least one (1) or more occasions Hawley and Castelli defrauded other individuals or entities, in addition to Plaintiff, by purporting to offer terms whereby, if the individuals and/or entities perform work under a telecommunications services project, then JWH will pay them for the work performed. However, JWH fails to remit payment for work performed under these projects and is not properly bonded, leaving the individuals and/or entities unpaid for work performed on behalf of JWH.

66. Hawley and Castelli have devised this scheme to defraud and obtain money by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. § 1343.

67. Specifically, Hawley and Castelli have utilized communication through numerous telephone and electronic email to defraud Plaintiff out of more than $49,500.00 in honest services rendered by Plaintiff pursuant to the Sprint Project.

68. Upon information and belief, Hawley and Castelli continue to use JWH as a means to secure telecommunications services projects with the public, vis-à-vis Sprint contracts, without the required payment bonds.

69. As a direct and proximate result of Hawley's and Castelli's racketeering activity, Plaintiff has incurred monetary loss, damage to business reputation, lost profits, debt and interest payments, and further harm to its business.

70. As a proximate consequence of Hawley's and Castelli's violation of RICO, Plaintiff is entitled to treble damages in an amount no less than one hundred forty-eight thousand and five hundred dollars ($148,500.00), plus court costs and attorneys' fees.

## COUNT II
### Business Conspiracy
### (As to all Defendants)

71. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

72. Plaintiff avers that Defendants are liable for common law business conspiracy and/or business conspiracy pursuant to Va. Code Ann. § 18.2-499, *et seq.*

73. Defendants combined, associated, agreed or acted in concert together for the purpose of willfully and maliciously injuring Plaintiff's business.

74. Specifically, Defendants, by and through their respective agents, combined and engaged Plaintiff to perform work on the Sprint Project while holding out to the public that Sprint required payment bonds of its contractors, and that JWH, as a contractor of Sprint, in fact held such payment bond as required.

75. Further, Defendants held out to the public that all work performed on the Sprint Project was paid for.

76. Defendants acted intentionally, purposefully, and without lawful justification in engaging Plaintiff and accepting Plaintiff's services and harming Plaintiff's business.

77. In fact, Defendants each accepted Plaintiff's services without paying Plaintiff or ensuring that a proper payment bond was in place to ensure payment to Plaintiff, without the knowledge or consent of Plaintiff.

78. Upon information and belief, Defendants knew of the failure to pay Plaintiff pursuant to the Sprint Project, and accepted Plaintiff's services, and any benefit derived therefrom, on the Sprint Project.

79. As a result of Defendants' actions, Plaintiff has incurred damages, which include, but are not limited to lost profits, pecuniary loss, and other business-related damages.

## COUNT III
### Fraud in the Inducement
**(As to all Defendants)**

80. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

81. Defendants, themselves and through their agents, have made numerous misrepresentations to Plaintiff and have concealed facts, which were material to the Agreement, and were made regarding issues and facts that were present when the material misrepresentations were made.

82. In particular, Defendants fraudulently misrepresented or concealed from Plaintiff that, at a minimum and pursuant to the Insurance and Bonds Policy, JWH held the required payment bond(s) in relation to work performed by any subcontractor, including Plaintiff, as to work performed by such subcontractors on the Sprint Project.

83. Further, Defendants fraudulently misrepresented or concealed from Plaintiff that it was not guaranteed to receive payment for work it performed on the Sprint Project on behalf and for the benefit of Defendants.

84. Plaintiff is informed and believes and based thereon alleges that Defendants made these material misrepresentations or omissions knowingly and intentionally with the intent to mislead

Plaintiff.

85. Defendants, together and separately, suppressed, concealed, or misrepresented these facts with the intent to induce reliance and to defraud Plaintiff.

86. As a direct and proximate result of these material misrepresentations, Plaintiff has suffered harm.

87. Absent these misrepresentations, Plaintiff would not have performed work on the Sprint Project.

88. Defendants thus acted under circumstances amounting to a reckless, willful, and wanton disregard to Plaintiff's rights and justify an award of punitive damages.

89. As a proximate consequence of Defendants' actual fraud, Plaintiff has suffered damage in an amount no less than $49,500.00, plus court costs and attorneys' fees.

**COUNT IV**
**Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing**
**(As to Defendant JWH)**

90. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

91. On or about October 11, 2016, JWH and Plaintiff entered into the Agreement whereby Plaintiff agreed to perform services on the Sprint Project on behalf of JWH in exchange for payment for all services provided.

92. Plaintiff performed work on the Sprint Project, pursuant to the terms of the Agreement, from approximately October 11, 2016, until the close of the Sprint Project, on or about November 3, 2016.

93. Upon information and belief, JWH received payment from Sprint in satisfaction of work

performed by Plaintiff.

94. Despite numerous requests for payment from Plaintiff, and numerous representations by JWH that payment was forthcoming, JWH has failed to pay Plaintiff for all services performed by it on the Sprint Project as required by the terms of the Agreement.

95. As a result, JWH has materially breached the terms of the Agreement.

96. As a direct, foreseeable, and proximate result of JWH's breach, Plaintiff has suffered damages in an amount no less than $49,500.00, plus court costs and interest.

**COUNT V**
**Quantum Meruit/Unjust Enrichment**
**(As to Defendants JWH and Sprint)**

97. Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full, and alternatively, in the event that this Court finds that no contract existed between the parties, avers that Defendants JWH and Sprint are liable under quantum meruit and/or unjust enrichment.

98. As set forth above, Plaintiff provided, as a minimum, $49,500.00 in services to Defendants in furtherance of the completion of the Sprint Project.

99. Defendants have knowledge of the benefits conferred by Plaintiff, and at all time encouraged, accepted and asked for Plaintiff's services in return for payment.

100. Defendants, at the time Plaintiff performed the services, were aware and/or had reasonable notice that Plaintiff was expecting to receive payment for such services.

101. Defendants accepted, used, and enjoyed the services Plaintiff provided from approximately October 11, 2016 to approximately November 3, 2016.

102. Circumstances are such that it would be inequitable for Defendants to retain the benefit of

Plaintiff's services without providing payment in exchange.

103. Defendants would be unjustly enriched in the minimum amount of $49,500.00 if they are allowed to retain the benefit of Plaintiff's services without providing payment as offered.

104. Defendants' failure to provide payment in exchange for the services provided by Plaintiff, has caused, and will continue to cause, Plaintiff to incur actual damages.

105. As a direct, foreseeable, and proximate result of Defendants' unjust enrichment, Plaintiff has suffered monetary damages in an amount to be determined at trial, but no less than $49,500.00, plus court costs and interest.

## **PRAYER FOR RELIEF**

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on Plaintiff's behalf against Defendants, as applicable;

B. Compensatory damages in an amount to be proven at trial;

C. For all statutory damages, as is appropriate;

D. For punitive damages on each count where available, including pursuant to Va. Code § 8.01-38.1 in the amount of $350,000.00;

E. Treble damages, three times of the amount of actual damages, pursuant to 18 U.S.C § 1964(c), as applicable;

F. Treble damages, three times of the amount of actual damages, pursuant Va. Code § 8.2-500, as applicable;

G. An award of attorneys' fees and full costs pursuant to 18 U.S.C § 1964(c), Va. Code § 8.2-500, as applicable, and under other applicable law;

H. For pre-judgment and post-judgment interest according to law, as applicable; and

I. For such other relief as this Court may consider just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Date: September 27, 2018    Respectfully submitted,

FRONTLINE CONTRACTORS, LLC

By: /s/ _Andrea Harris_____
Robert Powers, Esq. (VSB No. 80822)
Andrea Harris, Esq. (VSB No. 90022)
Veronica Hernandez, Esq. (VSB No. 90086)
MCCLANAHAN POWERS, PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182
Telephone: (703) 520-1326
Facsimile:  (703) 828-0205
Email: rpowers@mcplegal.com
    aharris@mcplegal.com
    vhernandez@mcplegal.com
    crackleff@mcplegal.com
*Counsel for Plaintiff*

## CERTIFICATE OF TRANSMISSION

I hereby certify that the forgoing COMPLAINT with EXHIBITS are being electronically transmitted via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/ on the date noted below. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: September 27, 2018    By: /s/ _Andrea Harris_____
        One of the Attorneys for Plaintiff,
        FRONTLINE CONTRACTORS, LLC